UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:10-cv-271-RJC-DCK

| | |
|---|---|
| BIANCA LAMPKIN, Adminiatrator of the Estate of Ameia Lampkin, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| | ) **ORDER** |
| COVINGTON AT PROVIDENCE HOMEOWNERS ASSOC., INC., HAWTHORNE MANAGEMENT CO., BALLANTYNE CONGREGATION of JEHOVAH'S WITNESSES, WATCHTOWER BIBLE AND TRACT SOCIETY of NEW YORK, INC., and JUANA F. CHALMERS, | ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

THIS MATTER comes before the Court on Defendants Covington at Providence Homeowner's Association, Inc. ("Covington") and Hawthorne Management Company's ("Hawthorne") Motion for Summary Judgment, (Doc. No. 39), and Defendant Juana Chalmers's ("Chalmers") Motion for Summary Judgment, (Doc. No. 40).

## I. BACKGROUND

This case stems from the tragic drowning death of five-year-old Ameia Lampkin ("Ameia") on July 30, 2008 in the Covington community pool. (Doc. No. 1 at 4-5). Ameia's mother, Bianca Lampkin ("Plaintiff"), brings this suit on behalf of Ameia's estate. When the incident occurred, Ameia was present at the pool in the custody and care of her step-grandmother, Angela Lampkin ("Angela"). (Doc. No. 39-2: Angela Dep. at 8-9). Ameia lived in Chicago, Illinois, but her mother sent her to Charlotte, North Carolina to visit her grandfather

and step-grandmother.  (Id. at 4).

Angela took Ameia and her own two children, ages three and one, to the pool party. (Id.).  The party guests consisted of a group of about 30 church friends.  (Id. at 5-6).  The only resident of the community present at this party was Juana Chalmers.  (Doc. No. 39-3: Chalmers Dep. at 12).  Chalmers invited these friends to the party and informed them that there would not be a lifeguard on duty.  (Id. at 5).

Each year, Covington and Hawthorne sent residents a list of pool rules for that summer. (Doc. No. 39-6).  The 2008 rules required prior permission for pool parties and that children be accompanied by an adult.  (Id.).  The publication notifying residents of these rules also warned that there would not be a lifeguard at the pool.  (Id.).  These pool rules were also posted at the pool.  (Doc. No. 39-7).  The pool was equipped with a life preserver, 12-foot pole with body hook, dedicated 911 phone, and warnings that no lifeguard was on duty and that children must be accompanied by an adult.  (Doc. No. 39-7 at 1, 5, 7, 13).

Earlier that summer, Covington and Hawthorne learned that unauthorized nonresidents were using the pool and even jumping the fence to gain access to the pool.  (Doc. No. 39-4: Ken Boate Dep. at 14).  Covington board member Ken Boate ("Boate") testified that Covington hired an attendant to screen residents at the gate to insure only authorized individuals were entering the pool area.  (Id.).  Boate testified that the attendant was present more during the first part of the season and then less once trespassers had been dissuaded from attempting entry.  (Id.).  The attendant was not responsible for observing residents in the pool.  (Id. at 14-15).

The party began around 1:30 p.m. on July 30, 2008.  (Doc. No. 39-3: Chalmers Dep. at 7).  The attendant was not working that day.  (Id.).  Chalmers opened the locked pool gate with her key.  (Id. at 5).  Angela brought hamburgers and hotdogs for the group.  (Doc. No. 39-2:

Angela Dep. at 6). During the party, Boate drove within one hundred feet of the pool. (Doc. No. 39-4: Boate Dep. at 18). While he saw people at the pool, he testified that he did not think a party was in progress. (Id.).

After "quite a while" at the party, Angela entered the pool with Ameia and her two children. (Doc. No. 39-2: Angela Dep. at 6). During this swim, Ameia used a pink floatation doughnut that Chalmers brought to the pool. (Doc. No. 39-3: Chalmers Dep. at 8). Chalmers was also in the pool near Ameia. (Id.). Around 4:30 p.m., Angela got out of the pool with Ameia and her kids to take them to the bathroom. (Id.). Angela asked Chalmers to hold her infant and took Ameia and her three-year-old to the bathroom. (Id. at 9); (Doc. No. 39-2: Angela Dep. at 6). Angela's three-year-old then requested something to eat. (Doc. No. 39-3: Chalmers Dep. at 9). Angela seated him and Ameia in some chairs near the food. (Doc. No. 39-2: Angela Dep. at 6). She gave her three-year-old a hotdog and Ameia a cookie. (Id.). Angela's infant then began to cry. (Id.). Angela left Ameia and her three-year-old to tend to her infant. (Id.). A few minutes later, an older child found Ameia lying on the bottom of the center of the pool. (Doc. No. 39-3: Chalmers Dep. at 14, 22). Her bathing suit was found outside the pool on the side opposite the entrance. (Doc. No. 39-5: Police Report at 2). The pink floatation device Ameia had used earlier was also found outside the pool on the side nearest the entrance. (Id.). No one saw how Ameia entered the pool or what caused her to drown. (Id.). Chalmers and Angela rushed to the side of the pool where the other child brought Ameia. (Doc. No. 39-2: Angela Dep. at 7). Chalmers and Angela both attempted CPR and someone called 911. (Id.). An ambulance arrived and took Ameia to the hospital. (Id.). Ameia later died at the hospital. (Doc. No. 39-3: Chalmers Dep. at 9).

Plaintiff brought suit against Covington and Hawthorne claiming among other things that

3

there were no lifeguards present at the pool and that the party was in violation of the pool rules which Covington and Hawthorne should have enforced. (Doc. No. 1 at 5, 7-8). Plaintiff brought suit against Chalmers, alleging that she hosted the party and was responsible for the safety of attendees. (Id. at 12-13). Plaintiff has dismissed her allegations against the local and national organizations of the group's religion. (Doc. No. 20).

## II.    LEGAL STANDARD

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. That party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert Cnty., Md.,

48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S. Ct. 2658, 2677 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

## III. ANALYSIS

### A. Covington

Ordinarily negligence cases are not susceptible to summary judgment, but on the rare occasion where the requirements of Rule 56 are met, the Court has an obligation to grant summary judgment. Fidelity and Deposit Co. of Md. v. Bank of Bladenboro, 596 F.2d 632, 635 (4th Cir. 1979). This is such an occasion.

"To state a claim for common law negligence, a plaintiff must allege: (1) a legal duty; (2) a breach thereof; and (3) injury proximately caused by the breach." Fussell v. N.C. Farm Bureau Mut. Ins. Co., 695 S.E.2d 437, 440 (N.C. 2010). Under North Carolina law, property owners owe all lawful visitors a duty of reasonable care. Nelson v. Freeland, 507 S.E.2d 882, 892 (N.C. 1998). "The operator of a swimming pool for hire does not insure the safety of his invitees. He does, however, owe them the duty to exercise due care to see that his premises are reasonably safe for the purposes for which he offers them to the public. Sneed v. Lions Club of Murphy, 159 S.E.2d 770, 773 (N.C. 1968).

#### 1. Lack of Lifeguards

Plaintiff alleges that Covington and Hawthorne were negligent in failing to provide a

5

lifeguard at their pool. (Doc. No. 1 at 5).[1] The defendants answer that North Carolina law does not require them to have had a lifeguard. (Doc. No. 39-1 at 6-7).

Private homeowners have no duty to provide a lifeguard at a private pool. Royal v. Armstrong, 524 S.E.2d 600, 603 (N.C. Ct. App. 2000). But Covington and Hawthorne's pool is public. See N.C. GEN. STAT. § 130A-280. North Carolina law provides that an apartment or other membership facility pool is a "public swimming pool," subject to the Department of Environment and Natural Resources's ("DENR") rules concerning the operation of public swimming pools. Id.; 15A N.C. ADMIN. CODE 18A.2508 et seq. These rules are in place for the "protection of the public health and safety." N.C. GEN. STAT. § 130A-280. The General Assembly tasked the Commission for Public Health with creating these rules in 1989. These rules do not require public pools to employ lifeguards. Instead, they provide that "[w]hen a swimming pool does not have at least one lifeguard on duty, a sign shall be posted . . . stating: 'WARNING-NO LIFEGUARD ON DUTY.'" 15A N.C. ADMIN. CODE 18A.2530(c). These rules also mandate very specific safety mechanisms that the pool must have, including: a 12-foot pole "with a body hook securely attached," a ring buoy attached to a "1/4 inch diameter throwing rope as long as one and one-half times the maximum width of the pool," and a dedicated phone capable of directly dialing 911. 15A N.C. ADMIN. CODE 18A.2530(a) & (f).

In Andrews v. Taylor, the court affirmed a directed verdict in favor of the owner of an apartment complex pool against the estate of a child who drowned. 239 S.E.2d 630, 632 (N.C. Ct. App. 1977), abrogated on other grounds by Nelson, 507 S.E.2d 882. The court classified the

---

[1] During oral argument, however, Plaintiff's counsel seemed to contradict this allegation and stated that Plaintiff does not believe Covington and Hawthorne were required to provide a lifeguard. (Hearing Tr. at 24).

deceased as a licensee to whom the defendant owed "only the duty to refrain from injuring him wilfully or through wanton negligence." Id. The Andrews court held that "no facts were presented sufficient to show or justify the inference that [the defendant] was wilfully or wantonly negligent in the operation and maintenance of the [pool.]" Id. The court reasoned that "[t]he failure of [the owner of an apartment complex swimming pool] to provide lifeguards and rescue equipment at his pool did not amount to negligence in light of the absence of any regulation requiring the same and the presence of the 'swim at your own risk' notice." Id.

In Nelson, the court abolished the distinction between licensees and invitees. 507 S.E.2d at 892. North Carolina law now requires a standard of reasonable care toward all lawful visitors. Id. Even though the Andrews court limited its holding to a finding of no wilful or wanton negligence, its reasoning still informs this Court's ordinary negligence inquiry. Cf. Duval v. OM Hospitality, LLC, 651 S.E.2d 261, 265 n.3 (N.C. Ct. App. 2007) (holding that pre-Nelson cases are "still good law" for propositions unaffected by the outdated duty to licensees). The Andrews court based its holding on its finding that the absence of any regulation requiring lifeguards or rescue equipment precluded finding the defendant negligent for those omissions. Id. This reasoning survives Nelson because it is not dependent upon the victim being a licensee. The Andrews court reasoned that a pool owner's actions were not negligent if those actions did not violate any pool safety regulation.

North Carolina courts have adopted other safety regulations as the standard of care in negligence cases. Mosteller v. Duke Energy Corp., 698 S.E.2d 424, 431 (N.C. Ct. App. 2010) (regulations governing placement of utility poles); see also Schenk v. HNA Holdings, Inc., 613 S.E.2d 503, 508 (N.C. Ct. App. 2005) ("OSHA regulations are evidence of custom and can be used to establish the standard of care required in the industry," but "a violation of OSHA

7

regulations is not negligence per se"). In Mosteller, the court held that:

> for a safety regulation to be adopted as a standard of care, the purpose of the regulation must be at least in part:
>
> (a) to protect a class of persons which includes the one whose interest is invaded, and
>
> (b) to protect the particular interest which is invaded, and
>
> (c) to protect that interest against the kind of harm which has resulted, and
>
> (d) to protect that interest against the particular hazard from which the harm results.

698 S.E.2d at 432. DENR's rules were enacted for the "protection of the public health and safety." N.C. GEN. STAT. §§ 130A-280 & 130A-282; see also 15A N.C. ADMIN. CODE 18A.2530 ("Safety Provisions"). These rules expressly contemplate the safety hazards public pools pose to children. 15A N.C. ADMIN. CODE 18A.2530(c) (requiring signs stating "CHILDREN SHOULD NOT USE THE SWIMMING POOL WITHOUT ADULT SUPERVISION"). The rules expressly require other protections meant to prevent drowning. Id. A five-year-old child suffered precisely that harm in this case. These public pool safety requirements establish the standard of care in public pool drowning cases. See Andrews, 239 S.E.2d at 632.

Ordinarily the plaintiff might look to use the violation of such a safety provision to establish negligence per se. See (Doc. No. 1: Plaintiff's Complaint at 6). Here, however, it is the defendant who argues that its compliance with DENR's detailed safety rules precludes finding it negligent. (Doc. No. 39-1 at 7). This defensive use of the safety regulations is what led the Andrews court to conclude that "[t]he failure of [the owner of an apartment complex swimming pool] to provide lifeguards and rescue equipment at his pool did not amount to negligence." 239 S.E.2d at 632. Likewise, the Royal v. Armstrong court rejected negligence

claims based on the lack of lifeguards or signaling devices at a private pool because North Carolina courts "never have held that private homeowners are required to provide a lifeguard at a private pool . . . [and] plaintiffs failed to establish that such equipment was required by law or ordinance." 524 S.E.2d at 603; see also Sasser v. Beck, 308 S.E.2d 722, 723 (N.C. Ct. App. 1983) (affirming directed verdict in pool drowning case where plaintiff "presented no evidence that additional safety measures were required by statute or ordinance").

The absence of a specific safety precaution cannot amount to negligence in a pool drowning case under North Carolina law where no regulation required that precaution. Covington and Hawthorne's failure to provide lifeguards at their pool cannot amount to negligence where DENR's safety regulations did not require lifeguards and Covington and Hawthorne posted warnings and provided other safety equipment, as required by the regulations.

Plaintiff points to cases where North Carolina courts have held that landowners may be liable where a lifeguard they hire fails to provide reasonable care or where a reasonable landowner would have hired a second lifeguard. Corda v. Brook Valley Enters., Inc., 306 S.E.2d 173, 176 (N.C. App. 1983); Sneed, 159 S.E.2d at 773. But these cases do not address whether the defendants had a duty to provide a lifeguard in first place. The DENR regulations, Andrews, Royal, and Sasser all demonstrate that the defendants did not have such a duty.

        2.      <u>Other alleged breaches of the duty of reasonable care</u>

Plaintiff alleged that each defendant committed sixteen other acts of negligence. (Doc. No. 1 at 5-6). Of those, the following thirteen appear to refer to Covington and Hawthorne: (1) failure to secure the pool with proper locks; (2) failure to have a separate "kiddie" pool; (3) failure to rope off the deep end of the pool; (4) failure to insist that children be accompanied by

9

an adult; (5) failure to provide floatation devices including life preservers; (6) failure to post sufficient warning signs; (7) failure to warn of hazardous and dangerous conditions; (8) allowed a dangerous condition to exist on the property; (9) failure to establish rules and regulations for the pool; (10) failure to provide event hosts such a list of rules; (11) failure to enforce these rules; (12) failure to abide by the Mecklenburg County public swimming pool rules and regulations; and (13) failure to abide by the DENR's public swimming pool rules and regulations. (Doc. No. 1 at 5-6).

Plaintiff has failed to put forward evidence supporting these allegations. Some of these allegations are subject to dismissal because there is no evidence that the alleged acts occurred, while the others are subject to dismissal because there is no evidence that they proximately caused Ameia's death. See Myers v. Barringer, 398 S.E.2d 615, 619 (N.C. Ct. App. 1990) (affirming summary judgment where there was no evidence that defendant's conduct was the proximate cause of plaintiff's injuries).

First, there is no evidence that Covington and Hawthorne failed to: (1) insist on adults accompanying children; (2) provide a life preserver; (3) post sufficient warnings; (4) establish or publish a list of pool rules; or (5) abide by Mecklenburg or North Carolina public swimming pool regulations. Plaintiff's expert, Thomas Ebro, acknowledges that Covington and Hawthorne established a list of pool rules, notified residents of these rules annually, and "displayed a large signboard with the pool rules conspicuously posted." (Doc. No. 43-3 at 6). The pool was equipped with a life preserver, 12-foot pole with body hook, dedicated 911 phone, and warnings that no lifeguard was on duty and that children must be accompanied by adults. (Doc. No. 39-7 at 1, 5, 7, 13). Plaintiff's allegations appear to be subject to dismissal for the reasons stated, absent material facts in dispute unknown to the Court.

Second, there is no evidence that the following allegedly negligent acts proximately caused Ameia's death: (1) failure to secure the pool with proper locks; (2) failure to have a separate "kiddie" pool; (3) failure to rope off the deep end of the pool; (4) failure to warn of hazardous and dangerous conditions allowed to exist on the property; and (5) failure to enforce the pool rules with an attendant. The pool gate was locked until Chalmers opened it with her key. (Doc. No. 39-2 at 5). No amount of additional precautions could have kept Ameia out of the pool area.

There is no evidence that a separate "kiddie" pool would have prevented Ameia from entering the main pool or from drowning in shallower water. Plaintiff has not presented any evidence of what caused Ameia to drown or how she entered the pool after Angela placed her in a chair to eat a cookie. Plaintiff's expert does not address the benefits of a separate "kiddie" pool. (Doc. No. 43-3).

Similarly, Plaintiff presents no evidence that roping off the deep end of the pool would have saved Ameia. Ameia was found in the center of the pool, halfway between the deepest and shallowest ends. (Doc. No. 39-3 at 22).

The only hazardous condition that Plaintiff has argued is that there was a party at the pool. (Doc. No. 43 at 12-13). Plaintiff has failed to support her allegation that Covington and Hawthorne's failure to enforce their anti-pool party rule proximately caused Ameia's death. Such a claim requires evidence that the defendants were aware of the hazardous condition. See Padgett v. J.C. Penney Co., 437 S.E.2d 401, 403 (N.C. Ct. App. 1993).

Plaintiff's expert testified that Boate must have been aware of the party because he drove within 100 feet of the pool and "smoke from grilling hamburgers and hot dogs would have been noticeable." (Doc. No. 43-3 at 6). Plaintiff's expert witness may be qualified to opine as to the

11

cause of Ameia's death or how a lifeguard may have prevented it, but he is not qualified to give an opinion as to whether Boate was aware that an illicit pool party was in progress. (Doc. No. 44-3: Expert's Curriculum Vitae). Further, the evidence establishes that Angela prepared the hotdogs and hamburgers at her home before bringing them to the pool party, (Doc. No. 39-2 at 6), and no smoke would have been noticeable.

Even if Covington and Hawthorne were aware of an improper pool party, there is no evidence that the number of people or any misbehavior contributed to Ameia's death. It appears that Angela was distracted by her own child's cries and took her eyes off of Ameia. The next time anyone saw Ameia, it was too late. Without any evidence of proximate cause, this claim must be dismissed.

Even assuming Plaintiff could show that Boate knew about the party and that the party proximately caused Ameia's death, Covington and Hawthorne would still not be liable. "A landowner is under no duty to protect a visitor against dangers either known or so obvious and apparent that they reasonably may be expected to be discovered. Similarly, a landowner need not warn of any apparent hazards or circumstances of which the invitee has equal or superior knowledge. Rather, a reasonable person should be observant to avoid injury from a known and obvious danger." Von Viczay v. Thoms, 538 S.E.2d 629, 631 (N.C. App. 2000); see also Branks v. Kern, 359 S.E.2d 780, 782-83 (N.C. 1987), abrogated on other grounds by Nelson v. Freeland, 507 S.E.2d 882 ("However, it has long been the law in North Carolina that there is no duty to warn an invitee of a hazard obvious to any ordinarily intelligent person using his eyes in an ordinary manner, or one of which the plaintiff had equal or superior knowledge"). The pool party was open and obvious.

Plaintiff also argues that Covington and Hawthorne voluntarily assumed the duty to

provide an attendant at the pool's gate and that their failure to provide an attendant on the date of the incident is actionable negligence. (Doc. No. 43 at 11). But Plaintiff does not address proximate cause. (Id.). Plaintiff argues that if the attendant had been there, Angela and Ameia would have been denied access to the pool area and Ameia would not have drowned. (Id.). But, as discussed above, there is no evidence that the presence of nonresidents at the pool contributed to Ameia's death. Plaintiff does not allege that Defendant's occasional attendant did anything other than regulate access to the pool area. (Doc. No. 43 at 11). The attendant was not tasked with observing swimmers. (Doc. No. 39-4: Boate Dep. at 14-15). Thus, there is no evidence that the lack of an attendant proximately caused Ameia's drowning. See Myers, 398 S.E.2d at 619 (affirming summary judgment where plaintiff presented no evidence of proximate cause).

The only proximate cause that Plaintiff's expert points to was Angela Lampkin's failure to supervise Ameia. (Doc. No. 43-3 at 7) ("had a lifeguard existed or had the pool party not taken place, it would have meant that Angela Lampkin's failed supervision would not have constituted the proximate cause of Ameia's drowning"). But Plaintiff elected not to sue Ameia's step-grandmother.

Covington and Hawthorne had no duty to provide a lifeguard. See Andrews, 239 S.E.2d at 632; N.C. GEN. STAT. § 130A-280; 15A N.C. ADMIN. CODE 18A.2530. Plaintiff failed to present evidence that the number of people or any misbehavior at the pool party contributed to Ameia's death. It appears that Plaintiff has also failed to present evidence that any other allegedly negligent act or omission occurred or proximately caused Ameia's tragic death. Covington and Hawthorne, however, only moved for summary judgment on Plaintiff's theories that the defendants are liable based on their lack of a lifeguard and failure to prevent an illicit party. (Doc. No. 39-1 at 1-2). Their motion, (Doc. No. 39), is **GRANTED**.

13

The Court raises the possibility of issuing summary judgment with regard to Plaintiff's remaining allegations sua sponte. See U.S. Dev. Corp. v. Peoples Federal Sav. & Loan Ass'n, 873 F.2d 731, 735 (4th Cir. 1989). Plaintiff has fourteen (14) days from the date of this Order to show cause why, in light of the Court's ruling, this case should not be dismissed.

**B.     Chalmers**

Plaintiff also alleged that Chalmers was liable for Ameia's death for negligently supervising the pool party. (Doc. No. 1 at 13). In Royal v. Armstrong, the court held that an adult who volunteered to host a child's pool party was required to exercise reasonable care in supervising the children lawfully using the pool at her invitation. 524 S.E.2d 600, 603 (N.C. Ct. App. 2000). The court reasoned that such a host, like a teacher or day care provider, is entrusted with the welfare of a child and has "a duty to the [child] to exercise a standard of care that a person of ordinary prudence, charged with similar duties, would exercise under similar circumstances." Id. at 603-04.

North Carolina law, however, also provides that "[o]rdinarily when parents are present, in charge of their children of tender years, the responsibility for their care and safety falls on the parents." Freeze v. Covington, 171 S.E.2d 424, 426 (N.C. 1970), abrogated on other grounds by, Nelson, 507 S.E.2d 882 (quoting Watson v. Nichols, 155 S.E.2d 154, 157 (N.C. 1967)); see also Vares v. Vares, 571 S.E.2d 612, 616 (N.C. Ct. App. 2002). This doctrine extends beyond parents and applies when the child is accompanied "by someone to whom [the child's] custody has been committed by the parent." Freeze, 171 S.E.2d at 426. Bianca Lampkin, Ameia's mother, sent Ameia to Charlotte and entrusted Angela Lampkin and her husband with Ameia's care for the week. Angela supervised Ameia throughout the pool party and was responsible for her care. While Angela was not physically present with Ameia when she got up from her chair

and entered the pool, Angela did not ask anyone else to watch her three-year-old or Ameia. Angela remained responsible for their care. See Watson, 155 S.E.2d at 157 (parents responsible for care even where they were "negligently failing to exercise any supervision of the infant plaintiff" and did not observe child approach a lawnmower). Chalmers had no duty to supervise Ameia and cannot be liable for negligent supervision.

Apart from a general duty to supervise, Plaintiff argues that Chalmers took on a duty of reasonable care when she provided Ameia an allegedly inadequate floatation device. (Doc. No. 44 at 11-12). Chalmers disputes that she provided Ameia with this device or took on such a duty. (Hearing Tr. at 14-15). But even assuming Chalmers was negligent in providing Ameia a faulty floaty, Plaintiff failed to present any evidence of proximate cause. Ameia used this device long before she drowned. (Doc. No. 39-3: Chalmers Dep. at 8, 14). Angela left Ameia in a chair outside the pool, without any floatation device. (Doc. No. 39-2: Angela Dep. at 6). Somehow the child ended up in the pool while no one was watching. The floaty Chalmers allegedly provided Ameia was found on the other side of the pool area, far from where Ameia's swimsuit was found. (Doc. No. 39-5: Police Report at 2). The floatation device did not contribute to her death in any way.

Chalmers's Motion for Summary Judgment, (Doc. No. 40), is **GRANTED**.

IV. **CONCLUSION**

   **IT IS, THEREFORE, ORDERED that:**

   **1.**   Covington and Hawthorne's Motion for Summary Judgment, (Doc. No. 39), is **GRANTED.**

   **2.**   Chalmers's Motion for Summary Judgment, (Doc. No. 40), is **GRANTED**; and

   3.   Plaintiff has fourteen (14) days from the date of this Order to show cause why, in

light of the Court's ruling, this case should not be dismissed.

      Signed: November 9, 2011

Robert J. Conrad, Jr.
Chief United States District Judge